UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARK SINISTOVIC, | : | |
| | : | Civil Action No. 10-6713 (SRC) |
| Petitioner, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| OSCAR AVILES, Director of Corrections, Hudson County Department of Corrections; et al., | : | |
| | : | |
| Respondents. | : | |

**CHESLER**, District Judge

This matter comes before the Court upon the Petition of Mark Sinistovic ("Petitioner" or "Sinistovic") for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his continued detention by the United States Immigration and Customs Enforcement ("ICE") as unlawful and unconstitutional under *Zadvydas v. Davis*, 533 U.S. 687 (2001). Sinistovic is currently in custody at the Hudson County Correctional Facility in Kearny, New Jersey. He filed the instant Petition on December 22, 2010 naming several Respondents, specifically Oscar Aviles, the warden of the facility where Sinistovic is detained; Eric H. Holder, Attorney General of the United States; John Morton, Assistant Secretary of ICE; Janet Napolitano, Secretary of the Department of Homeland Security; Christopher Shanahan, a Field Office Director with the Office of Detention and Removal; and David Venturella, Director of the Office of Detention and

Removal. Shortly thereafter, the Court entered an Order directing Respondents to answer the Petition. Respondents opposed Petitioner's application for relief under § 2241 and filed their own motion to dismiss the Petition. The Court has considered the written submissions. For the reasons expressed below, the Court will grant Respondents' motion and dismiss the Petition.

I.  **BACKGROUND**

Sinistovic is a native of the country formerly known as Yugoslavia. He entered the United States through John F. Kennedy International Airport on March 17, 1994 without a valid entry document. Following an attempt by Petitioner to secure asylum, and Petitioner's failure to appear at the asylum hearing, an Immigration Judge ordered him removed *in absentia* to to a country then known as "Serbia-Montenegro" by order of October 23, 1998 (the "Removal Order"). Petitioner did not appeal the Removal Order, and it became final. Several years later, however, he moved to re-open the asylum proceedings, but this attempt was also unsuccessful.

On April 15, 2010, Sinistovic was detained in New York and taken into custody there by ICE pursuant to the Removal Order. Since approximately May 20, 2010, Sinistovic has been detained at his still-current placement in the Hudson County, New Jersey Correction Center.

On April 29, 2010, approximately two weeks after Sinistovic was taken into custody, he filed a second motion to re-open his asylum proceedings before the Immigration Judge. The motion was denied, and Sinistovic appealed that decision to the Board of Immigration Appeals ("BIA"). The BIA denied the appeal. Thereafter, on September 7, 2010, Sinistovic filed an appeal of the BIA's decision with the United States Court of Appeals for the Second Circuit.

That appeal is currently pending.  Upon Sinistovic's application, the Second Circuit issued an Order on February 2, 2011 staying his removal pending the appeal.

Upon Sinistovic's detention, ICE pursued the possibility of his removal to various republics of the former Yugoslavia, as the country where Petitioner was ordered removed - "Serbia-Montenegro" - no longer exists.  ICE was thereafter able to confirm, through the government of the country now known as Montenegro, that Petitioner was born in Podgorica, Montenegro.  Thus ICE requested travel documents for him from the government of Montenegro, a country to which the United States successfully repatriates aliens, according to Respondents' papers.  Montenegro denied the request because Sinistovic is not registered in the Book of Montenegrin Citizens and thus was not a officially a citizen of that country.  The Montenegrin Consulate further advised, however, that Sinistovic could obtain official citizenship and thus become eligible for the issuance travel documents from Montenegro by making a written request to register in the Book of Citizens.  On at least four separate occasions, beginning in September 2010 and according to the record as recently as February 2011, Sinistovic was provided with the paperwork to register as a Montenegrin citizen, but he has consistently refused to comply with the necessary steps for registration, which consist of signing the request, having it notarized and furnishing the completed document to his case officer.  In October 2010 and again in January 2011, Field Office Director Shanahan issued Sinistovic notice, as required by law, that Sinistovic's detention would continue based on his failure to cooperate with the efforts to obtain his travel documents for removal to Montenegro.

## II. DISCUSSION

The Court reviews Respondents' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a claim for failure to state a claim upon which relief may be granted. In conducting this review, the Court must apply the plausibility standard articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). In *Twombly* and *Iqbal*, the Supreme Court stressed that a complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556.) The cases are also clear about what will not suffice: "threadbare recitals of the elements of a cause of action," an "unadorned, the-defendant-unlawfully-harmed-me accusation" and conclusory statements "devoid of factual enhancement." *Id.* at 1949-50; *Twombly*, 550 U.S. at 555-57. While the complaint need not demonstrate that a defendant is *probably* liable for the wrongdoing, allegations that give rise to the mere *possibility* of unlawful conduct will not do. *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 557. In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based upon those documents and matters of public record. *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007).

As an initial matter, the Court addresses a straightforward issue raised by Respondents' motion. They argue that the Petition must be dismissed as to all Respondents other than Aviles for the simple reason that the relief that Petitioner seeks cannot be ordered against any respondent other than "the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95 (1973). Respondents are correct. The only proper respondent in a case challenging physical custody is "the immediate custodian" of the petitioner. *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004). "It is the warden of the prison of the facility where the detainee is held that is considered the custodian for purposes of a habeas actions." *Yi v. Maugans*, 24 F.3d 500, 507 (3d Cir. 1994). Aviles, who is the warden of the facility where Petitioner is being held, is the only proper respondent to this Petition for a writ of habeas corpus. For this reason alone, the Petition must be dismissed against Respondents Holder, Morton, Napolitano Shanahan and Venturella.

As to Respondent Aviles, the Petition must be dismissed as premature. The statute governing the detention and removal of aliens ordered to be removed, 8 U.S.C. § 1231, requires the detention of the individual to be removed for the duration of the "removal period," defined to generally have an outer limit of 90 days. 8 U.S.C. § 1231(a)(1) and (2). Post-removal-period detention is authorized, 8 U.S.C. § 1231(a)(6), but under the Supreme Court's holding in *Zadvydas*, cannot continue indefinitely. *Zadvydas,* 533 U.S. at 689. In *Zadvydas*, the Supreme Court held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* It recognized six months as a presumptively reasonable period of detention. *Id.* at 701. To state a claim under

5

*Zadvydas*, the presumptively reasonably six-month period "must have expired at the time [the] petition was filed . . ." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

The removal statute, however, also expressly provides for an extension of the prescribed 90-day removal period for failure by an alien to cooperate in the effort to obtain necessary travel documents. It states in relevant part as follows:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or *refuses to make timely application in good faith for travel or other documents necessary to the alien's departure* or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C) (emphasis added). *Zadvydas*, and its limitation of post-removal-period detention affords no relief to a detainee whose removal has been frustrated by the detainee's own failure to cooperate with the removal process. *Barenboy v. Attorney General of the United States*, 160 F.App'x 258, 259-60 (3d Cir. 2005); *Camara v. Gonzalez*, No. 06-1568 (JAG), 2007 WL 4322949, at *4 (D.N.J. Dec. 6, 2007); *Francois v. Chertoff*, No. 06-3589 (FSH), 2006 WL 2668193, at *3 (D.N.J. Sept. 15, 2006); *see also Sango-Dema v. District Director*, I.N.S., 122 F.Supp.2d 213, 221 (D.Mass. 2000) (holding, before the Supreme Court's *Zadvydas* decision, that even assuming a recognized constitutional right to be free from indefinite detention pending removal, "an alien cannot trigger such a right with his outright refusal to cooperate with [immigration] officials."). The suspension of the removal period under § 1231(a)(1)(C) indeed renders a *Zadvydas* claim premature. *Barenboy*, 160 F.App'x at 261; *Francois,* 2006 WL 2668193, at *3. Moreover, even after the presumptive six-month post-removal period of detention has run, the alien petitioning to released from custody still bears the burden of demonstrating that there is no significant likelihood of removal in the foreseeable future.

6

*Zadvydas*, 533 U.S. at 701. As the Ninth Circuit has reasoned in rejecting a *Zadvydas* claim where the petitioner has failed to cooperate with removal efforts, "*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir.2003).

Sinistovic has repeatedly refused to complete the application to become an official citizen of the country of his birthplace. Petitioner has been made aware that his registration in Montenegro's Book of Citizens is an indispensable prerequisite for the issuance of travel documents by Montenegro and, moreover, that registration can only be accomplished upon the citizen's written request. Indeed, the October 15, 2010 Notice of Failure to Comply, issued by ICE to Petitioner, specifically details the numerous attempts by ICE to have Sinistovic complete the required paperwork and Sinistovic's lack of cooperation with efforts to secure travel documents.[1] Sinistovic's lack of good faith effort to apply for documents necessary for his departure suspends the removal period under 8 U.S.C. § 1341(a)(1)(C), thus negating the essential *Zadvydas* prerequisite of unreasonably long post-removal-period detention. Sinistovic's own conduct has rendered his claim for habeas corpus relief implausible on its face. Petitioner cannot create the delay in effecting his removal and then seek release from detention pending removal based on the purportedly unreasonable duration of detention. The clock on post-removal-period detention can begin to run only after Sinistovic acts in good faith to apply for

---

[1] The Court notes that these notices are expressly identified by Petitioner in his § 2241 Petition.

registration in the Book of Citizens and cooperate in the preparation of any other documents necessary for his removal to Montenegro.

The *Zadvydas* claim is premature for an additional reason. The removal period has been deferred by the February 2, 2011 issuance of the Second Circuit's order staying Petitioner's removal. 8 U.S.C. § 1231(a)(1)(B)(ii). *See, e.g., Rodney v. Mukasey*, 340 F.App'x 761, 764-65 (3d Cir. 2009) (finding the petitioner's *Zadvydas* claim premature where petitioner's appeal of a BIA decision was pending and the Court of Appeals had granted a stay of removal). The governing statute provides that the removal period begins to run on the latest of the following three events:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B)(ii). After being taken into custody, Petitioner renewed his attempt to re-open his asylum proceedings. His requests having been denied by the Immigration Judge and the BIA, Petitioner has sought review by the Second Circuit as well as a stay of the removal order. In so doing, Petitioner has essentially tolled the period during which he may lawfully be detained. *Rodney*, 340 F.App'x at 764-65. Detention pending a challenge to a removal order is "neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*; it is, rather, directly associated with a judicial review process that has a definite and evidently impending termination point." *Soberanes v. Comfort*, 388 F.3d 1305 (10th Cir. 2004). Thus, on

this additional ground, the Petition must be dismissed for failure to state a claim upon which relief may be granted.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Respondents' motion to dismiss the instant Petition. Of course, there may come a time when Petitioner's claim for habeas corpus relief ripens, consistent with the observations made by the Court in this Opinion. The Court will accordingly dismiss the Petition without prejudice. An appropriate form of Order will be filed.

    s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: May 10, 2011

9